IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| KENNETH E. RAMSEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-CV-138 ) |
| RANDY JOHNSTON, ZACHARY WILEY, Chattanooga Code Officer, and ELECTRIC POWER BOARD OF CHATTANOOGA, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This civil action is before the court for consideration of defendant Zachary Wiley's motion for summary judgment. [Doc. 20]. Plaintiff has not responded, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a). Oral argument is unnecessary, and the motion is ripe for the court's determination.

Plaintiff has filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendant Wiley violated his Fourth Amendment rights by providing false information to a police officer, which resulted in Plaintiff's unlawful detention. Plaintiff also raises a state law claim of tortious interference with contract against each of the defendants. For the reasons that follow, the motion will be granted in part, the Fourth Amendment claims against Defendant Wiley will be dismissed, and the case will be remanded to the state court.

# I. BACKGROUND

In a sworn affidavit, attached to his complaint, Plaintiff alleges that, on the day in question, he exited a building located at 2436 Glass Street, which is not owned by the City of Chattanooga, but has a common wall with the building at 2440 Glass Street, which is owned by the City. [Doc. 1-1 at 6]. Plaintiff asserts that Defendant Wiley was "deliberately indifferent" as to the actual building address that Plaintiff had exited, and falsely informed a Chattanooga police officer that Plaintiff exited the building owned by the City, causing the police officer to detain Plaintiff for "about 2 hours." [*Id.*]. Plaintiff claims that Wiley's actions were the proximate cause of his detention without probable cause or reasonable suspicion. [*Id.* at 7].

The following facts are taken from the evidence submitted in support of Defendant Wiley's motion for summary judgment. On June 5, 2014, the property located at 2440 Glass Street, in Chattanooga, Tennessee, was sold to Hamilton County and the City of Chattanooga as part of a delinquent tax sale. [Doc. 20-1 at 1-2; Doc. 20-2 at 1]. Plaintiff was the prior owner of the property. [Doc. 20-1 at 2]. The delinquent tax sale occurred after property taxes were not paid to the City or Hamilton County for the years of 2010, 2011, 2012, or 2013. [Doc. 20-2 at 1]. As of September 4, 2018, the property was still owned by the City and Hamilton County. [*Id.*].

In April 2016, Harry Strickland was the General Supervisor of Blighted Abatement Property & Street Maintenance for the Public Works Department of the City of Chattanooga. [Doc. 20-3 at 1]. He was familiar with the property owned by the City and Hamilton County at 2440 Glass Street, and the building ("City Building") located on the

property, as he supervised the property when it was initially boarded up. [*Id*.]. On April 13, 2016, Strickland was driving by the property when he saw a vehicle parked behind the City Building, and believed that someone had entered the City Building because a garage door had been tampered with. [*Id*. at 1-2]. Strickland flagged down a passing Chattanooga Police Department ("CPD") officer and told him that he believed someone was in the building, then called Wiley to handle the matter. [*Id*. at 2].

Wiley is a Code Enforcement Inspector for the Neighborhood Services Department of the City of Chattanooga, and is commissioned as a special police officer for the City. [Doc. 20-5 at 1]. On April 13, 2016, Wiley received a call that someone was in the City Building, and he responded. [*Id*. at 2]. When he arrived, CPD officers were already there. [*Id*.]. At some point during the investigation, multiple individuals entered the City Building and concluded that someone was living in the building, based on items left inside. [Docs. 20-3 at 2; 20-6 at 1-2]. At the scene, Wiley saw Plaintiff exit and enter an adjacent building, owned by Randy Johnston, ("Johnston Building"), which is attached to the City Building by a door and passageway. [Docs. 20-3 at 2; 20-5 at 2; 20-8 at 1].

Lee Mayweather, an officer with the CPD, was dispatched to the City Building on April 13, 2016, regarding a suspicious person in an abandoned building. [Doc. 20-7 at 1]. Officer Mayweather walked around to the back side of the property, and was informed by a Public Works employee that a person had just stuck his head out of one of the doors. [*Id*. at 2]. Officer Mayweather then saw an older man exit a back door of the building. He then radioed another CPD officer to determine if this individual was the person they were looking for, and the CPD officer responded in the affirmative, and asked Officer

3

Mayweather to detain the man. [*Id*.]. Officer Mayweather briefly detained the person, later identified as Plaintiff, to determine the facts and circumstances of his entry into the building. [Docs. 20-3 at 2; 20-5 at 2; 20-7 at 2]. Wiley did not ask or instruct any CPD officer to detain Plaintiff, nor did Wiley participate in Plaintiff's detention. [Docs. 20-3 at 2; 20-4 at 2; 20-5 at 3; 20-6 at 2; 20-7 at 3]. While detaining Plaintiff, Officer Mayweather asked him if he had keys to the Johnston Building, and Plaintiff provided the key. [Docs. 20-3 at 2; 20-7 at 2].

While Plaintiff was detained, Wiley called the contact number for the Johnston Building and spoke to Johnston, who informed Wiley that Plaintiff had no right to stay in the Johnston Building, but was storing items there. [Docs. 20-3 at 2; 20-5 at 2]. Wiley also told Johnston that it appeared that Plaintiff was living in both the Johnston and City Buildings, based on food and toiletries found therein, and it appeared Plaintiff was accessing the City Building through the connecting passage from the Johnston Building. [Docs. 20-5 at 2; 20-8 at 2]. After learning that Plaintiff had permission to store items in the Johnston Building, Wiley shared this information with CPD officer who had been detaining Plaintiff. [Docs. 20-5 at 3; 20-7 at 2]. The CPD officer then released Plaintiff. [Docs. 20-5 at 3; 20-7 at 2]. Plaintiff was detained for no more than 20 minutes total. [Doc. 20-7 at 2].

## II. STANDARD OF REVIEW

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) sets forth the standard for governing

4

summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Moreover, mere conclusory and unsupported allegations, rooted in speculation, are insufficient to meet this burden. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

To defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id*. at 255. The court determines whether

the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id*. at 251-52.

Under Federal Rule of Civil Procedure 56(e), if a party fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the motion and may grant summary judgment if the motion and supporting materials show that the movant is entitled to it. Fed. R. Civ. P. 56(e). A sworn complaint carries the same weight as an affidavit for purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). Given that Plaintiff has not responded to Defendant Wiley's motion for summary judgment, and the time for response has long passed, *see* E.D. Tenn. L.R. 7.1(a), this Court will consider any fact that is not disputed by Plaintiff's sworn complaint as undisputed.

### III. ANALYSIS

#### A. Fourth Amendment Violation

Section 1983 permits a cause of action for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Fourth Amendment protects against *unreasonable* searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8 (1968). It is well established that the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if they lack probable cause

under the Fourth Amendment. *Ornelas v. United States*, 517 U.S. 690, 692 (1996); *Terry*, 392 U.S. at 30.

In his sworn complaint, Plaintiff states that Defendant Wiley acted with deliberate indifference in failing to determine whether Plaintiff had exited the Johnston Building or the City Building, and falsely informed CPD officers that Plaintiff exited the City Building. Plaintiff states that this provision of false information was the proximate cause of his detention. In support of his motion for summary judgment, Defendant Wiley submitted affidavits of himself and CPD officers who were present at the time of Plaintiff's detention, all of whom state that Defendant Wiley did not direct the CPD officers to detain Plaintiff, or participate in Plaintiff's detention in any way. Viewing these facts in the light most favorable to the Plaintiff, Plaintiff's claim boils down to the fact that Defendant Wiley informed the CPD officers that Plaintiff exited the City Building, and CPD officers temporarily detained Plaintiff on this ground.

Generally, providing information to the police does not expose a private individual to liability under § 1983, because their actions are not taken "under color of law." *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009). Here, however, the issue is whether Wiley, who was a "special police officer," can be liable for negligently providing inaccurate information to CPD officers, which resulted in the temporary detention of an individual. This Court is unaware of any support for such a claim based on mere negligence. Accordingly, the Court finds it highly improbable that Plaintiff could raise any Fourth Amendment claim against Wiley, who did not participate in his detention, but merely provided information that led to the detention by police.

7

Nonetheless, even if Plaintiff could raise such a claim against Wiley, he is entitled to qualified immunity by virtue of his position as a "special police officer." "Qualified immunity shields government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). To determine whether qualified immunity applies, the Court conducts a two-step inquiry: (1) viewing the facts in the light most favorable to the plaintiff, do the allegations give rise to a violation of a constitutional right; and (2) was the right clearly established at the time of the incident. *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012). These steps may be considered in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Qualified immunity provides ample room for mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). Once this defense is raised, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Chappell*, 585 F.3d at 907.

The District Court for the Western District of Michigan addressed a similar scenario when a Plaintiff sued a 9-1-1 dispatch supervisor who provided inaccurate information that a building was "Red-Tagged," for building code violations, which ultimately led to police entering a home and arresting the occupants for trespass onto a "Red-Tagged" property.

8

*Fineout v. Kostanko*, No. 1:15-cv-1118, 2017 WL 4533782, at *1-3 (W.D. Mich. Aug. 7, 2017). The court noted that the record indicated that the dispatch supervisor's actions were a simple mistake, there was no suggestion that the dispatch supervisor intentionally or knowingly provided incorrect information, and it was within the police officers' discretion to determine what to do with the information about the red-tag. *Id*. at *6. The court concluded that the supervisor's conduct, even if negligent, did not deprive her of qualified immunity. *Id*. at *7.

Likewise, here, at most, the record indicates that Wiley informed the CPD officers that Plaintiff was seen exiting the City Building, before investigating whether it was the City Building or the Johnston Building that Plaintiff had actually exited. Wiley did not request that the CPD officers detain Plaintiff, but the CPD officers, in their discretion, decided to temporarily detain Plaintiff pending further investigation. Plaintiff has not met his burden of showing that a reasonable officer would have known that informing other officers that Plaintiff exited a building owned by the City, before investigating the matter further to determine which building Plaintiff exited, was unlawful conduct. *See Saucier*, 533 U.S. at 202. To the contrary, the Sixth Circuit has held that suspicion of trespassing alone is sufficient to support a *Terry* stop. *United States v. Young*, 707 F.3d 598, 605 (6th Cir. 2012). Accordingly, a reasonable officer would not have believed that he was required to investigate the precise building that Plaintiff exited before informing other officers of his suspicion that Plaintiff was trespassing, even when such suspicion resulted in a *Terry* stop of the Plaintiff. Thus, Wiley is entitled to qualified immunity as to any Fourth

Amendment claim Plaintiff could raise for such conduct, and summary judgment is appropriate.

## B. Supplemental Jurisdiction

All that remains for consideration in this action are the pendent state law claims that the Plaintiff has raised, namely, his claim of tortious interference with contract. Pursuant to 28 U.S.C. § 1367(c)(2), a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims if "the district court has dismissed all claims over which it has original jurisdiction." That being the case here, the court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, defendant's motion for summary judgment will be **GRANTED** in part. Plaintiff's Fourth Amendment claims against Defendant Wiley are **DISMISSED**. The court will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's pendent state law claims, and those claims will be **REMANDED** to the state court. An order consistent with this opinion will be entered.

s/ Leon Jordan  
United States District Judge